## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **IRA M. LUBERT**, | ) |
| Plaintiff, | ) Civil Action No. 17-430 (MBH) |
| vs. | ) |
| **UNITED STATES OF AMERICA**, | ) |
| Defendant. | ) |

## AMENDED COMPLAINT

Plaintiff Ira M. Lubert, by and through his undersigned attorneys, states and alleges as follows:

### NATURE OF ACTION

1. In this action, Plaintiff seeks recovery of federal income taxes, plus statutory interest on those amounts, overpaid for the taxable year ending December 31, 2004.

2. The Internal Revenue Service ("IRS"), an agency of defendant United States of America, received payments of taxes in excess of what was, in fact, owed by Plaintiff for the taxable year ending December 31, 2004, the year at issue in this action.

### PARTIES, JURISDICTION, AND VENUE

3. Plaintiff currently resides at 225 South 18th Street, Unit 2001, Philadelphia, Pennsylvania 19103. During the tax year at issue in this complaint, Plaintiff resided in, St. Thomas, United States Virgin Islands 00802.

4. Defendant is the United States of America.

5. This action arises under the Internal Revenue Code for the recovery of federal income taxes paid by Plaintiff for the taxable year ending December 31, 2004, pursuant to 26 U.S.C. § 7422.

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(a)(1) and 1491.

7. Venue is proper in this Court.

## STATEMENT OF FACTS

### A. Plaintiff's Professional Career and Decision to Relocate to the U.S.V.I.

8. Plaintiff has launched and successfully operated private equity funds, and has investments in the real estate, hospitality, and technology areas.

9. By 2000, Plaintiff decided to move from the Philadelphia area where he resided to a location that would allow him to improve his lifestyle.

10. In the summer of 2002, Plaintiff visited the United States Virgin Islands ("U.S.V.I.") and decided to become a resident of that jurisdiction.

11. Plaintiff determined that the U.S.V.I., located over 1,600 miles from where he was currently residing, created sufficient distance to effect a lifestyle change but contained sufficient infrastructure and resources to permit him to continue his business activities.

12. Plaintiff was requested to consider relocating by, among others, an individual who became General Counsel to the Lieutenant Governor of the U.S.V.I.

13. Plaintiff learned of the U.S.V.I. Economic Development Credit ("EDC") program from the individual who became General Counsel and others and was assured of the *bona fides* of the EDC program.

14. Plaintiff researched and sought independent professional advice before determining to relocate to the U.S.V.I.

15. Plaintiff relocated to the U.S.V.I. in October 2002 and became a resident of the U.S.V.I.

16. In connection with his relocation, Plaintiff engaged in numerous activities including, among others, purchasing a home on St. Thomas; moving his personal possessions to the U.S.V.I.; filing a Form 8822, Change of Address, with the IRS; withdrawing from social organizations where he previously resided; notifying all of his investors in his funds of his move to the U.S.V.I.; purchasing a vehicle in the U.S.V.I.; obtaining a U.S.V.I. driver's license; registering to vote in the U.S.V.I.; obtaining home and mobile telephone numbers in the U.S.V.I.; and opening personal and business bank accounts in the U.S.V.I.

17. Plaintiff fully integrated and assimilated himself into the culture of the U.S.V.I. on and after October 2002.

18. In 2003, Plaintiff decided to build his "dream home" in the U.S.V.I. Plaintiff purchased a lot for $600,000 in June 2003 and spent the next two years constructing the home. When construction was completed, Plaintiff transferred his personal possessions from the home he had initially purchased to his newly-constructed "dream home."

19. By 2003, Plaintiff had formed Belgravia Partners, L.P. ("Belgravia"). Belgravia applied for EDC benefits and obtained EDC approval on or about November 1, 2003. At all times material hereto, Belgravia fulfilled all requirements necessary to obtain EDC credits.

20. Belgravia initially rented space in St. Thomas but then moved to a renovated building on Rhymer Highway in St. Thomas. The building was owned in part by Plaintiff and the building was leased to Belgravia.

      **B.**    **Plaintiff's Income Tax Returns for 2004**

21. During the taxable year ending December 31, 2004, Plaintiff was a *bona fide* resident of the U.S.V.I.

3

22. Plaintiff timely filed his Form 1040, U.S. Individual Income Tax Return, for the taxable year ending December 31, 2004, with the U.S.V.I. Bureau of Internal Revenue ("BIR") as a *bona fide* resident of the U.S.V.I.

23. As a *bona fide* resident of the U.S.V.I., and as a partner in, and employee of, Belgravia, Plaintiff was entitled to claim the EDC Credit pursuant to tax provisions contained in both U.S. and U.S.V.I. laws. *See* 26 U.S.C. § 932; 29 V.I.C. § 701 *et seq*.

24. As a result of the uncertainty in the law at that time surrounding the American Jobs Creation Action of 2004 and newly-enacted or modified Internal Revenue Code provisions, Plaintiff did not claim any EDC Credit to which he was entitled on his 2004 income tax return filed with the BIR.

25. As a protective measure, Plaintiff filed a duplicate Form 1040, U.S. Individual Income Tax Return, for the taxable year ending December 31, 2004, with the IRS, in the event that it was determined that Plaintiff had an obligation to file with the IRS.

26. Plaintiff attached to his Form 1040 for the taxable year ending December 31, 2004, a statement indicating that the return was being filed "as a protective measure, if pursuant to Treasury Regulation Section 1.932-1T(b) or otherwise, the United States Internal Revenue Service finally determines that the Taxpayer has an obligation to file a 2004 Form 1040 with the U.S. Internal Revenue Service. Taxpayer's payments of his estimated tax liability for 2004 have been made to both the U.S. Internal Revenue Service and the U.S.V.I. Bureau of Internal Revenue, as authorized by Treasury Regulation Section 1.932-1T(g)(2). As a bona fide resident of the United States Virgin Islands for all of 2004, the Taxpayer's 'Total Tax' and 'Amount You Owe' to the U.S. Treasury are zero. Although not reflected on the attached 2004 Form 1040, Taxpayer expressly reserves the right to claim all applicable tax benefits and/or credits by virtue

of taxpayer's status (i) as a bona fide resident of the United States Virgin Islands and (ii) as a participating beneficiary of the U.S.V.I Economic Development tax incentive program for 2004. Such tax benefits and/or credits subsequently may be claimed by the Taxpayer by filing an amended 2004 Form 1040 or through any other means permitted by law."

27. Plaintiff thus did not claim any EDC Credit to which he was entitled on his U.S.V.I 2004 income tax return or the protective filing with the IRS. Plaintiff's tax return reflected taxes paid of $8,219,211 to the U.S.V.I and the IRS. Plaintiff paid a total of $6,583,724 to the IRS for 2004.

### C. The First Refund Claim

28. On or about September 4, 2007, Plaintiff timely filed a refund claim for the taxable year ending December 31, 2004, pursuant to Revenue Procedure 2006-23 (the "First Refund Claim") (attached hereto as Exhibit A).

29. The First Refund Claim was sent to both the BIR and the IRS by certified mail.

30. The First Refund Claim sought a refund of $3,485,807.00 (plus statutory interest), which represented the amount of the EDC Credit for the taxable year ending December 31, 2004, that Plaintiff was entitled to claim on his U.S.V.I. income tax return and on the protective filing with the IRS.

31. To date, neither the IRS nor the BIR have acted upon the First Refund Claim.

### D. The Second Refund Claim

32. On or about May 20, 2010, Plaintiff filed an Application for Tentative Refund pursuant to Revenue Procedure 2009-52, carrying a net operating loss for the taxable year ending December 31, 2008, in the amount of $11,222,931.00 back to the taxable year ending December

31, 2005, and seeking a refund of $3,998,912.00 as a result of the carryback (attached hereto as Exhibit B).

33. Of the refund amount sought, the IRS subsequently refunded $1,746,564.11 to Plaintiff, and applied the remaining balance of the refund sought, $2,252,347.89, to the taxable year ending December 31, 2004. The IRS incorrectly applied $2,252,347.89 to Plaintiff's taxable year ending December 31, 2004, because, according to the IRS, Plaintiff had an outstanding balance due in that year. The IRS erroneously determined that Plaintiff had an outstanding balance due for the taxable year ending December 31, 2004, because it failed to credit Plaintiff for amounts he had previously paid.

34. Plaintiff promptly objected in writing to the IRS determination to apply $2,252,347.89 of his refund to a purported balance due for the taxable year ending December 31, 2004.

35. On or about August 4, 2010, at the suggestion of the IRS, Plaintiff filed a Form 1040X, Amended U.S. Individual Tax Return, for the taxable year ending December 31, 2004, seeking a refund of $2,252,347.89 with statutory interest (the "Second Refund Claim") (attached hereto as Exhibit C).

36. On September 1, 2011, Plaintiff also filed a Request for Competent Authority Assistance pursuant to Rev. Proc. 2006-23.

37. Despite soliciting the Second Refund Claim, on or about March 30, 2015, the IRS disallowed the Second Refund Claim.

38. To date, the IRS has not granted any Request for Competent Authority Assistance.

39. On or about April 28, 2015, Plaintiff filed a formal protest of the IRS determination to disallow the Second Refund Claim.

40. On or about June 17, 2016, the IRS Office of Appeals advised Plaintiff in writing that the Second Refund Claim was "timely," "eligible for consideration," and was being returned "to the originating office for consideration of the merits of the claim."

41. To date, the IRS has not granted the Second Refund Claim and the Second Refund Claim denial remains outstanding.

## COUNT ONE

### (Claim for Refund – $6,583,724.00 for Taxable Year Ending December 31, 2004)

42. Plaintiff repeats and incorporates each of the foregoing allegations as if fully set forth herein.

43. Plaintiff's First Refund Claim sought a refund in the amount of $3,485,807.00 (plus statutory interest) for the taxable year ending December 31, 2004.

44. Plaintiff's First Refund Claim was timely filed.

45. Plaintiff's First Refund Claim was based upon the amount of the EDC Credit to which Plaintiff was entitled to claim on his income tax return for that year, but did not. Plaintiff plainly noted in his First Refund Claim that he was a *bona fide* resident of the U.S.V.I for this year.

46. To date, the IRS has not acted upon Plaintiff's First Refund Claim in the amount of $3,485,807.00 plus statutory interest.

47. As a *bona fide* resident of the U.S.V.I., Plaintiff was not required to pay any taxes to the IRS for 2004 and Plaintiff's First Refund Claim fully presented Plaintiff's residency position. Plaintiff, in fact, paid $6,583,724.00 to the IRS for this year.

## COUNT TWO

### (Claim for Refund – $2,252,347.89 for Taxable Year Ending December 31, 2004)

48. Plaintiff repeats and incorporates each of the foregoing allegations as if fully set forth herein.

49. Plaintiff's Second Refund Claim seeks a refund in the amount of $2,252,347.89 (plus statutory interest) for the taxable year ending December 31, 2004.

50. Plaintiff's Second Refund Claim was timely filed.

51. Plaintiff's Second Refund Claim is based upon an erroneous application of funds by the IRS which failed to credit Plaintiff for taxes he paid for that year.

52. The IRS disallowed Plaintiff's Second Refund Claim.

53. Plaintiff timely protested the disallowance of the Second Refund Claim.

54. To date, the IRS has not granted Plaintiffs' Second Refund Claim in the amount of $2,252,347.89 plus statutory interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ira M. Lubert demands:

1. Judgment in his favor and against the United States of American in the amount of at least $6,583,724.00 for the taxable year ending December 31, 2004, plus statutory interest on that amount as allowed by law.

2. Judgment in his favor and against the United States of America in the amount of at least $2,252,347.89 for the taxable year ending December 31, 2004, plus statutory interest on that amount as allowed by law.

3. To the extent necessary, granting of Plaintiff's Request for Competent Authority Assistance.

4. Costs of this action.

5. Award of reasonable litigation costs and fees incurred in this action pursuant to 26 U.S.C. § 7430 and 28 U.S.C. § 2412.

6. Such other relief as the Court deems just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By:   /s/ Ian M. Comisky
      Ian M. Comisky
      Matthew D. Lee
2000 Market Street, 20th Floor
Philadelphia, PA  19103
(215) 299-2795, (215) 299-2765
(215) 299-2150 (facsimile)
icomisky@foxrothschild.com
mlee@foxrothschild.com

*Attorneys for Plaintiff Ira M. Lubert*

Dated:  May 19, 2017

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of May, 2017, I caused a true and correct copy of the foregoing to be served on the following counsel of record for the United States through the Court's electronic filing system:

Benjamin C. King, Jr.
U.S. Department of Justice
Tax Division, Claims Court Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044-0026
Benjamin.c.king@usdoj.gov


/s/ Ian M. Comisky
Ian M. Comisky
